UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GEORGE PAPPAS,

Plaintiff,

v.

TODD BLANCHE, et al,

Defendants.

No. 1:26-cv-12194-LTS

**MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Todd Blanche and the U.S. Department of Justice ("DOJ") (collectively, "Defendants"), by their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this motion to dismiss the complaint, Dkt. No. 1 ("Compl."), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1), and this memorandum of law in support of the motion,

**PRELIMINARY STATEMENT**

The facts recounted here are taken from the Complaint, and so can be taken as true for purposes of this motion to dismiss. Plaintiff was hired as an immigration judge in July 2023 for an initial two-year term. Compl., ECF No. 1, ¶¶, 16, 17. At the time, he would have been 65 or 66 years old, having been born in 1957. *Id.* ¶ 15. Prior to that, Plaintiff notes that his "background and activity" involved "advocating for immigrants and immigrants' rights." Some of the immigrant advocacy organization with which he was associated advocated for Hispanic immigrants. *Id.* ¶ 38. Plaintiff's own ethnic background is Greek. *Id.* ¶ 14. He does not assert that he is a member of any racial, religious, or sexual minority group, other than being a Greek-American. Shortly before his initial two-year appointment expired, Plaintiff was informed that his

employment as an immigration judge would come to an end, as he would not be converted to permanent status. *Id.* ¶ 21. He was removed effective the last day of his initial two-year appointment. *Id.*

Plaintiff alleges that the Defendants removed him for three different impermissible reasons. First, he alleges Title VII discrimination on the basis of national origin and ethnicity. He alleges he was discriminated against because of his Greek ancestry and national origin, and because he was professionally associated with people of Hispanic ancestry. Second, he alleges age discrimination under the ADEA. And third, he alleges that his termination violated his constitutional First Amendment rights because it was based on Defendants' disagreement with "political ideologies" it attributed to him and to organizations with which he was affiliated. *See, generally,* Compl.

Plaintiff fails to plead plausible claims for relief. Plaintiff fails to state a Title VII national origin claim based either on his own ethnicity or that of individuals with whom he was associated. Plaintiff fails to state an age discrimination claim because he alleges no connection between his age and Defendants' failure to convert his position from probationary to permanent. And Plaintiff fails to state a First Amendment claim because his position is not protected by the First Amendment. As courts have consistently held, under the *Elrod-Brandi* "political dismissal exception," certain governmental positions necessitate ideology-based employment decisions, and consequently, the First Amendment is not implicated if that allegedly occurs. The immigration judge position at the Executive Office for Immigration Review ("EOIR") is one such position.

Additionally, Plaintiff's complaint should be dismissed for failure to state a claim because, as an immigration judge, he was removable at will. Under Article II of the Constitution, the default rule is that principal and inferior officers are removable at will. There is a sole, narrow exception

to this rule: Congress may enact removal protection for certain inferior officers with "narrowly defined duties" and "no policymaking or administrative authority." *See Seila Law LLC v. Consumer Fin. Protection Bureau*, 591 U.S. 197, 204, 218 (2020). However, immigration judges do not fall within this exception because they have broad statutory authority and exercise their discretion in presiding over and disposing of immigration matters, which have significant consequences for governmental policy. And their decisions are subject only to limited and conditional review.

In addition to his substantive claims, Plaintiff seeks two additional remedies: a declaratory judgment and mandamus. See Compl., Counts IV and V respectively. He is entitled to neither. Plaintiff's request for declaratory judgment fails because it is duplicative of his underlying claims and seeks only a retrospective determination about his dismissal. His request for the extraordinary relief of mandamus fails because he does not (and cannot) identify any clear right to reinstatement or any duty requiring Defendants to reappoint him to his former position, and in any event, such relief would impermissibly undermine the separation of powers.

## LEGAL STANDARDS

A district court should dismiss a pleading, such as the instant complaint, under Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction to decide the asserted claims. *See* Fed. R. Civ. P. 12(b)(1). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must assert "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" if taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The court must accept well-pleaded factual allegations in the complaint as true and construe reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). Simply offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action

will not do." *Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). ."). In evaluating plausibility, this Court conducts a "two-step" inquiry. *Araujo v. UGL Unicco-Unicco Operations*, 53 F. Supp. 3d 371, 378 (D. Mass. 2014) (citation omitted). "First, the court must distinguish 'the [pleading's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* If the well-pleaded factual allegations—accepted as true—still fail to state a claim that is both "actionable as a matter of law and 'plausible on its face,'" the Court should dismiss the pleading. *Bartlett v. Dep't of Treasury*, 922 F. Supp. 2d 156, 158 (D. Mass. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VII

Plaintiff alleges that he "was not converted to a permanent position by Defendants because of his national origin (Greek) …". Compl. ¶ 43. This allegation is merely asserted and is unsupported. The Complaint contains no allegation that any of the Defendants took any notice of his Greek ancestry, or that they exhibited any animus toward Greek or Greek-American people. This Court dealt with a similar unsupported allegation in *Vounatsos v. Town of Dover*, 2011 WL 5027141 (D. Mass. 2011). There, the plaintiff's "belief" that "his … Greek heritage played a role in his termination" was not enough to create a triable issue of fact when "nothing in his [Complaint] or in the record offer[ed] even a hint of … national origin discrimination." *Id.* at *1. The same is true here.

Plaintiff also alleges that he was discriminated against because of his "close association with persons of Hispanic and Latin American race and national origin." Compl. ¶ 43. This is an effort to invoke the concept of associational discrimination, which allows a member of some group other than the one allegedly being discriminated against to bring a Title VII claim because of his or her association with that group. Here, Plaintiff identifies himself as being of Greek ancestry. Greeks are universally recognized as being white Europeans, and not Hispanic or Latin American. He asserts that his work as a lawyer representing Hispanic/Latin immigrants, and organizations that lobby and litigate on their behalf, allows him to assert on his own behalf discrimination against "persons of Hispanic and Latin American race and national origin." While the associational discrimination theory is recognized in the First Circuit, it has no applicability to situations like the one here. That is because what is really being asserted here is an advocacy theory of discrimination, not an associational one. The leading case is *Frith v. Whole Foods Market, Inc.,* 38 F.4th 263 (1st Cir. 2023).

> We note that the Sixth Circuit has recognized a claim for discrimination under Title VII based on one's "advocacy on behalf of protected class members." [*Barrett v. Whirlpool Corp.*, 556 F.3d 502 (6th Cir. 2009)] at 513. In *Johnson v. University of Cincinnati*, where the plaintiff, who happened to be Black, alleged that he was fired due to his "advocacy on behalf of minorities," the Sixth Circuit opined, "the fact that [p]laintiff has not alleged discrimination because of his race is of no moment inasmuch as it was a racial situation in which [p]laintiff became involved." 215 F.3d 561, 575 (6th Cir. 2000); see also *Barrett*, 556 F.3d at 514. In other words, unlike an associational claim, the race of the plaintiff is irrelevant for purposes of this "advocacy" theory of discrimination -- all that matters is the race of the persons on whose behalf the advocacy is occurring. Title VII's language, as discussed in [*Bostock v. Clayton County*, 590 U.S. 644 (2020)], forecloses such a theory, which essentially replaces the textual "because of such individual's race" with the atextual "because of such individual's advocacy for protected individuals."

*Frith,* 38 F.4th at 271. This Circuit has thus squarely rejected the Sixth Circuit's advocacy discrimination theory. Since that is the theory Plaintiff relies on here, he also cannot make out a Title VII race discrimination claim based on the race and ethnicity of his former legal clients.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ADEA

Plaintiff alleges that he "was not hired to a permanent position by Defendants because of his age." Compl. ¶ 49. The only factual assertion in the Complaint that might support the notion that Defendants engage in age discrimination is found in ¶ 33, where it is stated that "the majority of the Immigration Judges and Appellate Immigration Judges who were not converted to permanent positions and/or who were terminated are over the age of 40." A list of names of former judges who are believed to be over 40 and were not converted to permanent positions and terminated is given. *Id*. The Complaint, at ¶ 40, provides a list of names of judges who were converted to permanent status is given. But nothing is said about their ages. There is, very simply, no assertion that judges who were 40 or younger were treated any better, or any differently, than those who were older than 40. "In order to demonstrate statistically that [an employer] did not treat age neutrally, plaintiff must demonstrate that when the group of terminated employees is compared with the pool of employees from which the terminated employees were drawn, the comparison shows 'significant discrepancy in the incidence of protected status.' *Shenker v. Lockheed Sanders, Inc.,* 919 F.Supp. 55, 59 (D.Mass. 1996)." *Alves v. American Medical Response of Massachusetts, Inc.,* 76 F.Supp.2d 119, 122 (D.Mass. 1999). Plaintiff has not even asserted the existence of such a discrepancy, so his age discrimination claim is completely unsupported with any factual basis.

## III. THE FIRST AMENDMENT DOES NOT APPLY TO PLAINTIFF'S DISMISSAL

Plaintiff alleges that his temporary IJ position was not converted because of his "political affiliation, including because of his association with organizations affiliated with political ideologies contrary to those held by the Defendants, such as immigrants' rights

organizations[.]"Compl. ¶ 53.[1] These allegations cannot serve as the basis for a First Amendment claim. Under the *Elrod-Branti* doctrine, the purported reasons for his dismissal are valid grounds for IJ employment decisions and do not implicate the First Amendment.[2] "It is settled law that the *Elrod-Branti* doctrine extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position." *Padilla-Garcia v. Gillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir. 2000); *see also Rutan v. Republican Party of Illinois*, 497 U.S. 62, 71 n.5 (1990) (discussing the so-called *Elrod-Branti* exception derived from *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)). In the First Circuit, the leading case dealing with politically motivated dismissals is *Ortiz-Pinero v. Rivera-Arroyo*, 84 F.3d 7 (1st Cir. 1996), which states:

> We employ a two-part inquiry to identify "political" positions under the *Branti/Elrod* analysis:
>
> First, we inquire whether the overall functions of the employee's department or agency involve "decision making on issues where there is room for political disagreement on goals or their implementation." Second, we decide whether the particular responsibilities of the plaintiff's position, within the department or agency, resemble those of "a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement" for continued tenure. Among the indicia material to the second element are "'relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders.'" [*O'Connor v. Steeves,* 994 F.2d 905, 910 (1st Cir.), *cert. denied,* 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993)] (quoting *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987)) (other citations omitted).

---

[1] Plaintiff does not allege in his complaint that he was terminated because of any *speech*—only past association.

[2] Defendants do not concede that Plaintiff was dismissed for the reasons he alleges. Taking Plaintiff's allegations as true solely for purposes of the motion to dismiss, however, Defendants contend that he cannot state a claim under the First Amendment as a matter of law.

*Id.* at 12.

Here, the relevant factors support the conclusion that immigration judges pass the *Ortiz-Pinero* tests and so are covered by the *Elrod-Branti* "political dismissal exception" to the First Amendment.

*IJs are exempt from civil service protection*. Congress has defined the role of IJ as "an attorney whom the Attorney General appoints as an administrative judge within [EOIR]." *See* 8 U.S.C. § 1101(b)(4). The statutory provisions and accompanying regulations establishing and describing the position of IJ include no tenure or removal protections. *See id.*; *see also* 8 C.F.R. §§ 1003.1, 10. Further, IJs in their probationary period—like Plaintiff—are "excepted" employees, *see* 5 C.F.R. § 213.3102(d), and do not qualify for the removal protections of the Civil Service Reform Act ("CSRA"). *See* 5 U.S.C. §§ 7511(a)(1)(C), 7513. Even if they did, the Merit Systems Protection Board has squarely held that the federal civil-service protections of the CSRA could not constitutionally be applied to IJs given the president's Article II removal authority. *See Jackler & Jaroch Consolidation v. Dep't of Just., et al.*, No. CF-0752-26-0069-I-1, 2026 WL 789485, at *9 (M.S.P.B. Mar. 20, 2026). These facts go to the "decision making" and "policymaker" considerations in *Ortiz-Pinero*. IJs cannot be ordinary civil servants because they are part of the policy-making team put in place by a particular President, which is why the President must be able to remove them at his discretion.

*IJs are required to have technical competence or expertise*. Congress has specified that IJs must be attorneys. *See* 8 U.S.C. § 1101(b)(4). EOIR further explains in the public job description for the IJ position that applicants must have an advanced legal degree and must be an active member of the bar, authorized to practice law. *See* Job Posting, Department of Justice, Executive

Office for Immigration Review, Immigration Judge, found at https://perma.cc/LX9J-T84Y .[3] Beyond these credentials, EOIR requires that IJs possess "litigation or adjudication experience," including "trial experience" or "experience conducting administrative hearings or adjudicating administrative cases." *Id.* This goes to the "technical competence" consideration in *Ortiz-Pinero*.

*IJs control others*. IJs "work with a team that includes attorneys, legal assistants, and other support staff." *See id.* And they have significant authority in adjudicating cases: using their "independent judgment and discretion," they are empowered to "take any action consistent with their authorities . . . that is necessary or appropriate for the disposition" of the cases they hear. *See* 8 C.F.R. § 1003.10(b). To do so, they must "administer oaths, receive evidence, and interrogate, examine, and cross-examine aliens and any witnesses." *Id.*; *see also* 8 U.S.C. § 1229a(b)(1). They may also "issue administrative subpoenas for the attendance of witnesses and the presentation of evidence." *See* 8 C.F.R. § 1003.10(b); *see also* 8 U.S.C. § 1229a(b)(1). IJs are authorized to "sanction by civil money penalty any action (or inaction) in contempt of the judge's proper exercise of authority." *See* 8 U.S.C. § 1229a(b)(1). Their decisions, which are binding, include "administrative closure, termination of proceedings, and dismissal of proceedings." 8 C.F.R. § 1003.10(b). This goes to the "power to control others" consideration in *Ortiz-Pinero*.

*IJs are authorized to speak in the name of policymakers and are responsive to partisan politics and political leaders*. IJs are appointed by the Attorney General, *id.* § 1003.10(a), who, appointed by the president, is unquestionably a policymaker and political official. *See Kennedy v.*

---

[3] The Court may take judicial notice of the job description for an IJ for purposes of a motion to dismiss. *Louissaint v. Collins*, 795 F.Supp.3d 288, 294 fn. 2 (D.Mass. 2025) lists "documents that are official public records" as "one of the four types of documents" that "the court may properly take into account" on a motion to dismiss. This job posting was placed on USAJobs, a public-facing website owned and operated by the federal government for official purposes, and so qualifies as a public record by any standard.

*Braidwood Mgmt., Inc.*, 606 U.S. 748, 761 (2025). By law, IJs are directly responsive to the Attorney General. *See* 8 U.S.C. § 1101(b)(4) (specifying that IJs "shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe"); 8 C.F.R. § 1003.10(d) (providing that "[i]mmigration judges shall be governed by" decisions of the attorney general). And they speak for the attorney general when they preside over their matters. *See* 8 C.F.R. § 1003.10(a) (requiring that IJs "shall act as the Attorney General's delegates in the cases that come before them").[4] This goes to the "authority to speak in the name of policy-makers" consideration in *Ortiz-Pinero*.

*IJs influence government programs*. Although IJs decide only the individual matters before them, their decisions involve larger policy considerations, including priorities set by the attorney general and, in turn, the president. *See* 8 C.F.R. § 1003.10(d). As the Supreme Court explained in *Arizona v. United States*, "[i]mmigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation" and decisions by IJs "involve policy choices that bear on" issues such as "this Nation's international relations." 567 U.S. 387, 395-96 (2012). Further, IJs have the authority to confer myriad immigration benefits, including asylum, which can lead to U.S. citizenship, with implications for other government programs, including the provision of public benefits. *See* 8 C.F.R. § 1208.2(b). This goes to the "influence on programs" consideration in *Ortiz-Pinero*.

Given the contours of the IJ position, it is one in which "political affiliation or belief is an appropriate job qualification for the particular position," *O'Connor, supra*, at 909, and therefore a

---

[4] Although IJs do not necessarily have contact with elected officials *per se*—another one of the factors—the attorney general is directly accountable to the president, who is of course an elected official.

dismissal allegedly based on political or ideological reasons cannot, as a matter of law, give rise to a First Amendment claim. *See Savage*, 850 F.2d at 68.

## IV. PLAINTIFF MAY BE REMOVED AT WILL

Plaintiff's complaint also may be dismissed because as an inferior officer exercising policymaking and administrative authority, Plaintiff was removable at will, and therefore his dismissal was a proper exercise of Article II authority.

Article II of the U.S. Constitution provides that "[t]he executive Power shall be vested in a President," U.S. Const. Art. II § 1, cl. 1, who must "take care that the Laws be faithfully executed." *See id.* § 3. Under that grant of authority, the president "alone is vested with '[t]he executive Power' of the United States," *Trump v. Slaughter*, 609 U.S. ___, 146 S. Ct. 2283, at 2310 (2026) (quoting U.S. Const. Art II, § 1, cl. 1)), though he may "rely on subordinate officers for assistance." *Seila Law*, 591 U.S. at 204. These "Officers of the United States," *see* Art II. § 2, cl. 2, are a "class of government officials distinct from mere employees," of which there are two types: principal and inferior. *Lucia v. Securities and Exchange Commission*, 585 U.S. 237, 241 (2018) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976) (per curiam)); *see also Braidwood Mgmt., Inc.*, 606 U.S. at 759 ("The text of the Appointments Clause very clearly divides all its officers into two classes: principal officers and inferior officers." (cleaned up)).

IJs are inferior officers. *See Duenas v. Garland*, 78 F.4th 1069, 1073 (9th Cir. 2023) (holding that IJs are inferior officers because their "responsibilities are legally defined and continuous"); *cf. Freytag v. C.I.R.*, 501 U.S. 868, 881-82 (1991) (special trial judges are inferior officers because they have "duties and functions . . . delineated [by] . . . statute" and "perform more than ministerial tasks" with respect to which they must "exercise significant discretion").

Plaintiff was presumptively removable at will from his position as an IJ under Article II because the default rule is that "the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties,'" including principal and inferior officers. *See Seila Law*, 591 U.S. at 204 (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010)); *Braidwood Mgmt., Inc.*, 606 U.S. at 763-64 ("When a statute empowers a department head to appoint an officer, the default presumption is that the officer holds his position 'at the will and discretion of the head of the department[.]'" (quoting *In re Hennen*, 38 U.S. 230 (1839)). This removal authority is a *sine qua non* of executive authority under Article II. *See Free Enterprise Fund*, 561 U.S. at 514 (quoting The Federalist No. 7, at 478) (explaining that without removal power president "could not be held fully accountable for discharging his own responsibilities [and] the buck would stop somewhere else," which "would greatly diminish the intended and necessary responsibility" of the president).

The Supreme Court has identified only one exception to the president's "unrestricted removal power": "[C]ertain inferior officers with narrowly defined duties" and "no policymaking or administrative authority" may benefit from removal protection. *See Seila Law*, 591 U.S. at 204, 218.[5] This exception does not apply to IJs, in light of the broad statutory authority they possess to "conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). To do so, they have the power to "administer oaths, receive evidence, and interrogate, examine, and cross-examine aliens and any witnesses," as well as "issue administrative subpoenas for the attendance of witnesses and the presentation of evidence." 8 C.F.R. § 1003.10(b). In

---

5 In *Trump v. Slaughter*, the Supreme Court overruled *Humphrey's Executor v. United States*, which had recognized the constitutionality of for-cause removal protections given to multimember bodies of experts with "quasi-judicial" or "quasi-legislative" functions. *See Slaughter*, 146 S. Ct. at 2292, 2302.

rendering decisions, they are empowered to "exercise their independent judgment and discretion." *Id.* Their decisions are then subject only to limited appellate review by the Board of Immigration Appeals or the attorney general directly. *See id.* §§ 1003.10(b), (c); 8 U.S.C. § 1103(g)(2); 8 C.F.R. § 1003.1(h)(1)(i). As noted *supra*, their decisions have significant consequences for governmental policy. *See Arizona*, 567 U.S. at 396 (immigration "involve[s] policy choices that bear on this Nation's international relations"). And their decisions also affect the provision of public benefits, as IJs have the authority to grant aliens myriad immigration benefits, including asylum, which could lead to U.S. citizenship p. *See* 8 C.F.R. § 1208.2(b). For these reasons, IJs are unlike the independent counsel in *Morrison v. Olson*, whom the Supreme Court deemed to have no "policymaking or significant administrative authority." 487 U.S. 654, 691 (1988). There, unlike here, the independent counsel was tasked merely with "investigative and prosecutorial" tasks, including "participating in civil and criminal court proceedings." *Id.* at 662. IJs, by contrast, render decisions that conclusively resolve the matters before them on behalf of the attorney general.

Given the default rule cementing the president's Article II removal authority, the Supreme Court has held that Congress must use "very clear and explicit language" if it wishes to "take away the power of at-will removal from an appointing officer." *Braidwood Mgmt., Inc.*, 606 U.S. at 770-71 (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903)). Congress created the position of IJ as an inferior officer, vesting the appointment power with the attorney general. *See* 8 U.S.C. § 1101(b)(4). It could have specified that it was protecting IJs from removal—but chose not to do so. The "mere inference or implication," *Braidwood Mgmt., Inc.*, 606 U.S. at 771, that protections under Title VII or the First Amendment might apply does not suffice to defeat Article II's default

rule imbuing the president with unfettered removal authority. Accordingly, Plaintiff was subject to employment at the will of the Executive Branch and his claims should be dismissed.

## V. PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF

In Count IV, Plaintiff seeks "declaratory relief on the basis of all claims identified" under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202 to establish that "Defendants did not have authority to remove Plaintiff on the basis of national origin, race, age, or prior association." Compl. ¶ 56.

Plaintiff does not explain how this requested "declaratory relief" would be any different than what he would receive if he were victorious on one or more of Counts I through III. A plaintiff is ineligible for declaratory relief if such relief would only be "duplicative" of the relief requested elsewhere in his complaint. *Gormally Broadcasting Licenses, LLC v. Charter Communication Holding Company, LLC*, 2017 WL 3131956 (D.Mass. 2017) at *6. If the contemplated declaratory relief would be "nearly identical" to the relief the plaintiff is already seeking, it adds nothing to the case. *Sterry Street Auto Sales, Inc. v. Cummins Inc.,* 2020 WL 6871022 (D.Mass. 2020) at *3. Here, the request for declaratory relief appears to be not just "nearly," but completely, identical.

Of course, the declaratory relief claim can have no independent merit if the rest of the complaint has none, as is the case here. Count IV should be dismissed.

## VI. PLAINTIFF IS NOT ENTITLED TO MANDAMUS RELIEF

Finally, Plaintiff contends he is "entitled to a writ of mandamus or relief in the nature of mandamus commanding Defendants to return him to office." *See* Compl. ¶ 58. Plaintiff is entitled to no such relief.

The effect of the requested mandamus relief, should Plaintiff be granted it in addition to a favorable decision on one or more of Counts I through III, would be to require EOIR to restore

him to his position as an IJ with immediate effect, on pain of contempt. Plaintiff offers no explanation for why whatever relief he would obtain by winning his case without also obtaining mandamus relief would be inadequate. "[T]he party seeking mandamus relief must demonstrate that there are no adequate alternative remedies available." *In Re Financial Oversight and Mgmt. Bd. for Puerto Rico*, 985 F.3d 122, 127 (1st Cir. 2021). "The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." *Id.* (cleaned up). Plaintiff here has not even attempted to make such a showing; he has merely expressed his desire to receive mandamus relief.

Even if Plaintiff could meet the requirements for mandamus relief, the Court should still exercise its discretion to deny his claim because it raises grave separation-of-powers concerns. An order compelling the attorney general to reinstate Plaintiff would be an invasion of the president's "exercise of his constitutional appointment and removal powers," *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *5 (D.C. Cir. 2025) (Rao, J., dissenting), that in effect asks this Court to "enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (186). *See also Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 760 (2025) (explaining that Appointments Clause, which gives president the authority to appoint officers, "protect[s] the independence of the Executive Branch and maintain[s] the Constitution's separation of powers"). As is shown elsewhere in this brief, IJs are appointed through a process administered by executive branch officials who derive their authority from the President. Mandamus relief should not be granted in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the complaint in its entirety.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: October 28, 2026

By: *<u>/s/ Thomas W. Duffey</u>*
THOMAS W. DUFFEY
Assistant United States Attorney
U.S. Attorney's Office
1 Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3266
michael.fitzgerald2@usdoj.gov

## LOCAL RULE 7.1 CERTIFICATION

I certify that the parties were unable to resolve or narrow the issues presented by this motion.

*<u>/s/ Thomas W. Duffey</u>*
THOMAS W. DUFFEY
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*<u>/s/ Thomas W. Duffey</u>*
THOMAS W. DUFFEY
Assistant U.S. Attorney