**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **GEORGE PAPPAS** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **TODD BLANCHE** | ) | Civil No.: 1-26:cv-12194-LTS |
| In his official capacity as Attorney General | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **U.S. Department of Justice.** | ) | |
| | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, George Pappas, files this First Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Plaintiff Pappas filed his initial Complaint (ECF No. 1) on May 15, 2026. Defendants, Todd Blanche and the U.S. Department of Justice, filed their Motion to Dismiss (ECF No. 22) under Federal Rules of Civil Procedure 15(b)(6) and (b)(1) on October 28, 2026. Twenty-one days after October 28, 2026 is November 25, 2026. Therefore, Plaintiff's amendment is timely. Plaintiff's amendment is also timely as an Opposition to Defendants' Motion to Dismiss under the period fixed by order of the court (ECF No. 24) pursuant to Local Rule 7.1 of the United States District Court for the District of Massachusetts.

**Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 633a; Discrimination in Violation of the First Amendment of the U.S. Constitution**

Now comes Plaintiff George Pappas, by and through his undersigned attorneys, and files this Complaint for declaratory, injunctive, and monetary relief against his former employer, the Department of Justice (hereinafter, "DOJ" or "the Agency"), and Attorney General Todd Blanche in his official capacity (collectively, "Defendants") to seek redress for Defendants' violations of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a, and the First Amendment of the United States Constitution.

## JURISDICTION

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and the laws of the United States. Jurisdiction is also proper under 29 U.S.C. § 633a(c) and 42 U.S.C. § 2000e-5(f)(3), which applies pursuant to 42 U.S.C. § 2000e-16(d). The Court has authority to provide relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the mandamus statute, 28 U.S.C. § 1361.

2. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3). That is so because some or all of the unlawful employment practices were committed within the District of Massachusetts and because but for the Defendants' discriminatory practices, Plaintiff would have worked in Boston and Chelmsford, Massachusetts within the District of Massachusetts. Venue is also proper under 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff George Pappas is an adult resident and citizen of the State of North Carolina.

4. Defendant Todd Blanche is the Attorney General, the head of the Department of Justice. Defendant Blanche is sued in his official capacity.

5. Defendant United States Department of Justice is the agency which formerly employed Plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On August 15, 2025, Plaintiff contacted Defendants' Equal Employment Opportunity ("EEO") office and initiated informal counseling, alleging that he had been subjected to national origin, race, and age discrimination, pursuant to 29 C.F.R. § 1614.105(a).

7. On September 23, 2025, Plaintiff filed a Formal Complaint of Discrimination. In accordance with 29 C.F.R. § 1614.106(b), Plaintiff filed his Formal Complaint following the completion of informal counseling and within fifteen (15) days of Plaintiff's final interview and of his receipt of notification from his EEO counselor of his right to file a formal complaint.

8. On February 17, 2026, the DOJ issued a Final Agency Decision under 29 C.F.R. § 1614.110, dismissing Plaintiff's Formal Complaint as failing to state a claim.

9. In the Final Agency Decision, DOJ stated that Plaintiff's "status as an inferior officer under Article II of the Constitution renders him an 'at-will' employee, and his removal [wa]s beyond the purview of Title VII and the ADEA."

10. In the Final Agency Decision, DOJ asserted that Defendants' failure to convert Plaintiff's Immigration Judge position from a probationary to permanent position and their termination of his employment:

> w[ere] a lawful exercise of the Attorney General's authority under Article II of the Constitution. Article II of the Constitution allows the President and heads of departments exercising his power to remove inferior officers without cause, subject to only narrow exceptions that do not apply to your former position. No statute provides otherwise, and even if it did, the statute would run afoul of Article II.

11. DOJ went on to explain that *any* restriction at all on the power of the President to remove immigration judges from office at will would unduly restrict the executive power vested in a President.

12. In accordance with this unprecedentedly expansive view of Presidential power, which, if accepted, would strip broad classes of employees of protection under the anti-discrimination laws, DOJ refused to investigate the discrimination claims as required by law.

13. Plaintiff filed the instant action within ninety (90) days of receipt of the Agency's final action, pursuant to 29 C.F.R. § 1614.407(a), 42 U.S.C. § 2000e-16(c), and 29 U.S.C. § 633a(b)-(c).

## FACTS GIVING RISE TO RELIEF

1. Plaintiff Pappas was born in 1957.

2. Plaintiff Pappas was appointed to serve as Immigration Judge with the DOJ, Executive Office for Immigration Review ("EOIR"), Boston, Massachusetts and Chelmsford, Massachusetts Immigration Courts on July 23, 2023.

3. Pursuant to longstanding DOJ policy and practice, upon appointment, Immigration Judges initially serve a two-year term. After completing the two-year term, Immigration Judges' appointments have been routinely converted to permanent positions.

4. At no point during the application, appointment, orientation, training or investiture processes that took place in and between April and November 2023 did any DOJ employee indicate that Plaintiff or any newly appointed Immigration Judge would not be converted to a permanent position following satisfactory performance during the two-year term.

5. As an Immigration Judge, Plaintiff Pappas could not and did not engage in policymaking or exercise administrative authority.

6. Throughout his employment and during his probationary period as an Immigration Judge, Plaintiff Pappas exceeded all performance standards and received

"Satisfactory" ratings on his probationary period reports, the highest performance rating available.

7. On Plaintiff's March 23, 2025 Probationary Period Report, Assistant Chief Immigration Judge ("ACIJ") David Cheng observed that Judge Pappas "consistently completes cases efficiently and in a timely manner," "shows a strong willingness to learn and applies feedback effectively," and "is flexible and cooperative in assisting the court where and when necessary to help court operations run smoothly," demonstrating "[n]o issues regarding the scheduling or management of his docket."

8. At no time during his service as an Immigration Judge did Defendants ever issue Plaintiff any form of discipline or advise him that his performance was problematic in any fashion. He was never told that his performance was anything other than satisfactory.

9. Despite his excellent performance, on July 11, 2025, EOIR notified Plaintiff Pappas that his appointment would not be converted to a permanent position, and he would be terminated, effective July 22, 2025.

10. The notice stated that Plaintiff Pappas would be placed on administrative leave for the remainder of his current appointment, from July 11, 2025, until his term expired on July 22, 2025.

11. The notice also stated that "[p]ursuant to Article II of the Constitution, the Attorney General has decided not to extend [his] term or convert it to a permanent appointment."

12. The notice did not provide Plaintiff Pappas any other justification for his non-conversion.

13. In January and February 2025, then-Acting Director of EOIR Sirce Owen issued a series of policy memoranda that were hostile to noncitizens and noncitizen advocacy. Senior

leadership of the Trump Administration, including former-Deputy Chief of Staff for Policy and Homeland Security Advisor Stephen Miller and then-Attorney General Bondi, publicly accused immigrant advocacy organizations and lawyers representing noncitizens of committing immigration fraud and labeled them extremists aligned with domestic terrorism.

14. In or around February 2025, Defendants began issuing numerous memoranda announcing an end to Diversity, Equity, and Inclusion ("DEI") efforts.

15. One memorandum, issued by then-Attorney General Bondi in February 2025, promised to "penalize illegal DEI and DEIA preferences," particularly those "based on race or sex."

16. Other memoranda, issued by then-Acting Director Owen in February and March 2025, criticized the appointment practices of the prior administration, particularly with respect to Immigration Judges serving temporary appointments. The memoranda noted that the Agency had reviewed the hiring materials of any Immigration Judge hired under the prior administration, and alleged that persons of "certain backgrounds" were given favorable treatment over others. One memorandum stated that EOIR was "committed to rectifying those harms." Together, the memoranda laid bare the government's hostility to hiring individuals with immigrants' rights backgrounds, racial and ethnic minorities, and others who they  might perceive asr "DEI" hires.

17. Coinciding with the issuance of these memoranda, and despite Defendant DOJ's FY2026 budget permitting the hiring of up to 800 immigration judges, EOIR terminated a disproportionate number of Immigration Judges with immigrants' rights backgrounds, who were people of color, racial and ethnic minorities, and persons associated therewith.

18. Upon information and belief, among the class of thirty-eight (38) judges appointed in July 2023, an estimated twenty (20) were not converted to permanent positions, including Plaintiff.

19. Around the time Defendants decided not to convert Plaintiff Pappas into a permanent Immigration Judge, Defendants hired or retained Immigration Judges significantly younger than Plaintiff Pappas who were not associated with disfavored groups, such as Hispanic and Latin American individuals, and immigrants' rights organizations.

20. Prior to his appointment, Plaintiff Pappas worked closely and associated with Hispanic and Latin American individuals.

21. Prior to his appointment, Plaintiff Pappas spent twenty (20) years practicing immigration law, representing noncitizens as the principal attorney at George D. Pappas Esq., PC. There, his clients were predominantly Hispanic and Latin American individuals.

22. Prior to his appointment, Plaintiff Pappas also provided pro bono legal services to several immigrants' rights organizations, including the U.S. Committee for Refugees and Immigrants, the Political Asylum/Immigration Research Project (PAIR), Latin American Coalition, El Centro, and True Ridge. At each organization, Plaintiff Pappas' clients were predominantly Hispanic and Latin American individuals.

23. At the time of Plaintiff's termination, EOIR management knew of Plaintiff's background and activity advocating for immigrants and immigrants' rights, and his extensive history of association with Hispanic and Latin American individuals and groups associated with Hispanic and Latin American individuals because it was included in the resume he submitted with his application to serve as an Immigration Judge, and summarized in his August 11, 2023, Appointment Announcement.

24. Several Immigration Judges who were not converted to permanent positions and were terminated were Hispanic or Latin American and/or associated with Hispanic and Latin American individuals and/or groups associated with Hispanic and Latin American groups and individuals, such as through their previous work with immigrants' rights organizations prior to the time they were hired by DOJ, EOIR, including Florence Chamberlin and Kyra Lilien of the San Francisco Immigration Court; Christopher McNary of the Santa Ana Immigration Court; Sameer Ahmed of the Boston Immigration Court; Lucy Billings of the New York – Varick Immigration Court; Roberta Wilson, Sarah Torres, and Stephanie Tobosa Smit of the Concord Immigration Court; Carla Espinoza of the Chicago Immigration Court; Irma Pérez of the West Los Angeles Immigration Court; and Appellate Immigration Judge Homero López.

25. Upon information and belief, many of the Immigration Judges who were converted to permanent positions and who were retained in and around the time of Plaintiff Pappas's termination are white (non-Hispanic), including Justin Price, Jacob Stender, Jeremy Butler, and Colin Eichenberger of the Concord Immigration Court; Robert Lundberg of the Annandale Immigration Court; and Heather Libeu of the Santa Ana Immigration Court.

26. Upon information and belief, several of the Immigration Judges who were converted to permanent positions and who were retained in and around the time of Plaintiff Pappas's termination are not, and have not previously been, associated with Hispanic or Latin American individuals or with groups associated with Hispanic or Latin American individuals and have never represented or advocated for noncitizens, including Heather Libeu of the Santa Ana Immigration Court; Monica Neumann of the Miami Immigration Court; Sasha Xu of the Federal Plaza Immigration Court; Brandi Lohr of the Buffalo Immigration Court; Jacquelyn Jo Joyce of the Houston Immigration Court; Elizabeth Treacy of the Chicago Immigration Court; Natalie

Smith of the New York – Varick Immigration Court; and Robert Lundberg of the Annandale Immigration Court. Indeed, each of the foregoing Judges prosecuted noncitizens as counsel for Office of the Principal Legal Advisor, U.S. Immigration and Customs Enforcement, DHS.

27. Upon information and belief, the majority of the Immigration Judges who were not converted to permanent positions and who were terminated in and around the same time as Plaintiff Pappas are over the age of 40, including Chief Immigration Judge Sheila McNulty; EOIR Deputy Director Mary Cheng; ACIJ Rebecca Walters of the Annandale Immigration Court; ACIJ Rhana Ishimoto of the San Diego Immigration Court; ACIJ Megan Herndon of the Richmond Immigration Adjudication Center; ACIJ Megan Jackler of the New Orleans Immigration Court; ACIJ Noelle Sharp of the S. Gessner Road Immigration Court; Appellate Immigration Judges Katherine Clark and Andrea Saenz; Judge Vicenta Banuelos Rodriguez of the Imperial Immigration Court; Judges Elisa Brasil, Ila Deiss, Roger Dinh, Jami Vigil, and Chloe Dillon of the San Francisco Immigration Court; Judges Jenna Peyton and Jody Barilla of the Chicago Immigration Court; Judge Elanie Cintron of the Aurora Immigration Court; Judges Lucy Billings and Jennifer Durkin of the New York – Varick Immigration Court; Judges Kyra Lilien and Florence Chamberlin of the Concord Immigration Court; Judge Nicole Lomartire of the Annandale Immigration Court; Judge Jane Miller of the Indianapolis Immigration Court; Judge Zahra Jivani Fenelon of the Houston Immigration Court; Judge Carmen Maria Rey Caldas of the New York – Federal Plaza Immigration Court; Judge George Najjar of the San Diego Immigration Court; Judge Tania Nemer of the Cleveland Immigration Court; Judge Irma Pérez of the West Los Angeles Immigration Court; Judge Nina Froes of the Chelmsford Immigration Court; and Judge Adrian Paredes Velasco of the El Paso Immigration Court.

28. Around the time Defendants decided not to convert Plaintiff Pappas into a permanent Immigration Judge, Defendants retained Immigration Judges significantly younger than Plaintiff Pappas.

29. Upon information and belief, and based on publicly available records,[1] many Immigration Judges from Plaintiff Pappas's July 2023 class who were more than twenty years younger than he were converted to permanent positions at or around the time of his non-selection, including Judge Elizabeth Treacy of the Chicago Immigration Court; Jacquelyn Jo Joyce of the Houston Immigration Court; Heather Libeu of the Santa Ana Immigration Court; Brandi Lohr of the Buffalo Immigration Court; and Robert Lundberg of the Annandale Immigration Court. Plaintiff Pappas had approximately a decade or more of litigation experience than each of these Immigration Judges.

30. Upon information and belief, all Immigration Judges whose appointments Defendants converted to permanent positions at or around the time of his non-selection were, on average, at least ten (10) years younger than Plaintiff Pappas.

31. In sum, based on Plaintiff Pappas's age (over 40), his association with Latin American and Hispanic individuals and with groups associated with Hispanic and Latin American individuals, and his association or perceived association with organizations affiliated with political ideologies contrary to those held by Defendants, such as immigrants' rights organizations, Defendants decided to terminate Plaintiff Pappas and not to convert his two-year appointment to a permanent position.

## COUNT I
**Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*)**

---

[1] U.S. DEP'T OF JUSTICE, *EOIR Announces 38 New Immigration Judges* (Aug. 11, 2023), available at https://www.justice.gov/eoir/page/file/1592866/dl?inline.

32. Plaintiff Pappas incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-31 of this Complaint.

33. Plaintiff Pappas was not converted to a permanent position by Defendants because of his association with persons of Hispanic race and Latin American national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

34. Title VII protects individuals who are victims of discrimination against protected third persons with whom the individual associates.

35. Defendant never provided a legitimate, non-discriminatory justification for Plaintiff Pappas's removal and non-conversion. To the extent that Defendants provided a justification, that justification was a pretext.

36. As a direct and proximate result of the unlawful acts of Defendants, Plaintiff suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation, and mental distress. He has also incurred attorneys' fees.

## COUNT II
## Violation of the Age Discrimination in Employment Act (29 U.S.C. § 633a)

37. Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-31 of this Complaint.

38. At all times material to this Complaint, Plaintiff was a member of the class of persons protected by the ADEA's prohibition on discrimination on the basis of age.

39. Plaintiff was not hired to a permanent position by Defendants because of his age.

40. Defendants never provided a legitimate, non-discriminatory justification for Plaintiff's removal and non-conversion. To the extent that Defendants provided a justification, that justification was a pretext.

41. As a direct and proximate result of the unlawful acts of Defendants, Plaintiff suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation and mental distress. He has also incurred attorneys' fees.

**COUNT III**
**Violation of the First Amendment of the United States Constitution**

42. Plaintiff incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-31 of this Complaint.

43. Plaintiff was terminated because of his political affiliation, including because of his association with organizations affiliated with political ideologies contrary to those held by the Defendants, such as immigrants' rights organizations, in violation of the First Amendment of the U.S. Constitution.

44. Defendants never provided a legitimate, non-pretextual justification for Plaintiff's removal and non-conversion. To the extent that Defendants provided a justification, that justification was a pretext.

45. As a direct and proximate result of the unlawful acts of Defendants, Plaintiff suffered and continues to suffer lost earnings and benefits, pain, suffering, humiliation and mental distress. He has also incurred attorneys' fees.

**COUNT IV**
**Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202)**

46. Plaintiff Pappas incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-31 of this Complaint.

47. Plaintiff is entitled to declaratory relief for all claims identified. There is a substantial ongoing controversy between Plaintiff and Defendants, and a declaration of rights

under the Declaratory Judgment Act is both necessary and appropriate to establish that Defendants did not have authority to remove Plaintiff on the basis of national origin, race, age, or prior association.

**COUNT V**
**Writ of Mandamus**

48. Plaintiff Pappas incorporates by reference and re-alleges each of the allegations contained in paragraphs 1-31 of this Complaint.

49. In the alternative, Plaintiff is entitled to a writ of mandamus or relief in the nature of mandamus commanding Defendants to return him to his office.

50. Title VII, the ADEA, and the First Amendment impose a ministerial duty on all Defendants not to discriminate on the basis of national origin, race, age, or protected association. Plaintiff is entitled to a writ of mandamus returning him to his office. Absent this Court granting mandamus relief under one or more of the counts identified above, there is no other adequate means of redress.

* * *

**PRAYER FOR RELIEF**

WHEREFOR, the premises considered, Plaintiff Pappas respectfully prays that this Honorable Court:

1. Enter judgment on Plaintiff's behalf against Defendants;
2. Award Plaintiff compensatory damages, and other damages;
3. Reinstate Plaintiff to the position held prior to his unlawful termination or other equivalent position;
4. Award Plaintiff all lost pay and associated benefits;
5. Award Plaintiff his court costs, expenses, attorneys' fees, and interest;

6. Declare that Defendants' conduct is in violation of Title VII of the Civil Rights Act of 1964, as amended, the ADEA, and the First Amendment of the U.S. Constitution;
7. In the alternative, issue a writ of mandamus; and
8. Grant such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure Plaintiff demands a jury trial as to all issues so triable.

Dated: November 20, 2026

By:

Ellen J. Messing
MA Bar No. 343960
Wilchins, Cosentino & Novins, LLP
220 First Avenue Suite 302
Needham, MA 02494
T: 781-235-5500
emessing@wcnllp.com

By:

/s/*Geoffrey H. Simpson*

Geoffrey H. Simpson
MD Bar No. 18868
DC Bar No. 988437
Gilbert Employment Law, PC.
8403 Colesville Road, Suite 1000
Silver Spring, MD 20910
301-608-0880 Telephone
301-608-0881 Facsimile
gsimpson-efile@gelawyer.com
*Pro Hac Vice*

By:

Nathaniel A.G. Zelinsky
CT Bar No. 441128
DC Bar No. 1724093
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
nzelinsky@washingtonlitigationgroup.org
*Pro Hac Vice*

Francis Swanson
D.C. Bar No. 90025765
MD Bar No. 2212150001
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
fswanson@washingtonlitigationgroup.org
*Pro Hac Vice*

*Attorneys for Plaintiff George Pappas*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of November, 2026, this Amended Complaint was served via electronic delivery to Defendants' counsel via CM/ECF system which will forward copies to Counsel of Record.

*/s/ Kate Wehba*
Kate Wehba
Paralegal